**UNITED STATES of America,**
**Appellee,**

**v.**

**Juan Ignacio SANIN, a/k/a Jimmy,**
**Defendant–Appellant,**

**Carlos Mario Pastor–Alvarez, a/k/a Robin, Carlos Gustavo Barahona, Juan Manuel Valencia Echeverri, a/k/a Andres Felipe Lopez Acencio, and Julio Cesar Martinez Olaya, Defendants.**

**Docket No. 99–1442.**

United States Court of Appeals,
Second Circuit.

Argued: May 10, 2001.
Decided: May 25, 2001.

Lawrence Mark Stern, New York, NY, for Defendant–Appellant.

Thomas M. Finnegan, Assistant United States Attorney for the Southern District of New York, New York, N.Y. (Mary Jo White, United States Attorney, Robin L. Baker, Assistant United States Attorney, on the brief) for Appellee.

Before OAKES, WINTER, and STRAUB, Circuit Judges.

PER CURIAM:

Defendant–Appellant Juan Ignacio Sanin appeals from a decision of the United States District Court for the Southern District of New York (Miriam Goldman Cedarbaum, *Judge*) denying Sanin's motion, made pursuant to 28 U.S.C. § 2255, to vacate his conviction and sentence. On appeal, Sanin contends that the Supreme Court's decision in *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), constitutes a new rule of constitutional law which requires us to set aside his conviction and order a new trial. Sanin argues that his Sixth Amendment rights were violated when a post-arrest statement made by a non-testifying co-defendant was admitted at trial. Howev-er, because this issue was already litigated during Sanin's direct appeal, and because we find that *Gray* does not establish a new rule of constitutional law upon which Sanin can reopen issues previously decided, we hold that Sanin is procedurally barred from relitigating whether his Sixth Amendment right to confront witnesses was denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 30, 1993, an indictment was filed charging Sanin and several co-conspirators with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and distribution and possession of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2. While two of Sanin's co-defendants pled guilty, Sanin and two others proceeded to trial which commenced on August 2, 1994.

At trial, the government demonstrated that in 1992 and 1993, Sanin supervised a narcotics ring that attempted to transport large quantities of cocaine from Los Angeles to New York. Beginning in 1992, Sanin and several other conspirators arranged to have approximately 500 kilograms of cocaine arriving from Columbia driven from Los Angeles to New York. Sanin recruited several other members of the conspiracy including Franciso Arredondo, who, unbeknownst to Sanin, was a confidential informant employed by the United States Customs Service. In February 1993, the first shipment of cocaine, approximately 48 kilograms, was driven to New York and sold to local distributors. In late February 1993, two members of the ring were bound for New York with a second shipment of cocaine when they were arrested in Utah. At the same time, Sanin directed Carlos Gustavo Barahona to drive a third shipment to New York, giving him an airline

ticket to fly to Los Angeles and directions for obtaining a van to transport the cocaine. After the shipment arrived in New York, Arredondo informed Drug Enforcement Agency ("DEA") agents where the van containing the cocaine was garaged. On the same day, Sanin negotiated the sale of 25 kilograms of cocaine to a DEA agent working undercover. On March 3, 1993, DEA and U.S. Customs agents seized the van, which had been emptied of its cargo except for one kilogram of cocaine apparently missed by whomever emptied the van. Meanwhile, other agents arrested Sanin, Barahona, and the other members of the conspiracy.

Abundant evidence was presented to the jury regarding Sanin's involvement in the narcotics ring, including the testimony of Arredondo and the undercover DEA agent. Among the evidence introduced was a statement made by Barahona soon after he was arrested. Two government witnesses testified about Barahona's post-arrest statement. First, a United States Customs Special Agent who arrested Barahona testified that soon after Barahona was taken into custody, Barahona agreed to cooperate and described the activities of the narcotics ring. After counsel for defense objected to the use of leading questions and to the use of the post-arrest statement because of its prejudicial effect on co-defendants, the court instructed the jury that "the statement you have just heard and may hear more of, regarding Carlos Barahona, is received in evidence only as against him.... This is only received as to Carlos Barahona, and it is not evidence against the other two defendants." The agent then testified that Barahona told the arresting agents that he had been "recruited by other members in this organization...." After the agent concluded his testimony, defense counsel again objected to the use of the statement, initiating the following exchange out of the presence of the jury:

Defense Counsel: Your honor, may I make a motion at this point? [The agent] testified, when he was supposed to be redacting the statement, he referred to other members of the organization. I move to strike that because it is too specific, although he didn't mention the proper names of those people, I think it is improper. I think he could have said "others."

. . . . .

Court: You are talking about his statement that there was an organization. I have told the jury that they may not use that as to any defendant in this case.

Defense Counsel: I understand, but doesn't *Bruton* tell us you cannot specifically refer to the other defendants on trial. And just by using their proper names, that is one way, but you cannot then describe them.

. . . . .

Prosecutor: Your Honor, if I may be heard just briefly on this. If you think about the statement, in other words, another member of the organization was shipping the cocaine supplied him, with the tickets to go out to L.A. Obviously, it had to be somebody from the organization. It does not indicate—

Court: [][C]ome on, after there has been testimony that it was Mr. Sanin? It think it has been well-taken. I will tell the jury that I strike that one statement.

. . . . .

Court: [to the jury after recess] There was one sentence in the statement that was testified to before that I would like to strike. The reference to "other persons" should be stricken from the record and you should forget it.

Later during the trial, a DEA Special Agent, also present at Barahona's arrest, gave further details of Barahona's post-arrest statement. Prior to the agent's testimony, the court discussed aspects of the agent's testimony out of the presence of the jury. The prosecution agreed to instruct the agent not to use the proper names of defendants on trial when discussing Barahona's statement. Instead, the prosecutors offered to instruct the agent to use the words "some people" instead of the proper names of defendants. Defense counsel objected to the use of the word "people," arguing that "[t]here is other evidence in the case which is going to identify who those other people are." While the District Court stated that the proposed substitution of "some people" sufficiently protected the rights of the defendants, it asked the prosecution to instruct the witness not to use the word "people" when describing who provided Barahona with airline tickets. In open court, the judge again instructed the jury that "this statement by Carlos Barahona is received in evidence only as against Barahona and cannot be used as evidence against the other two defendants." The agent then testified that "[Barahona] stated that in January of 1993, several individuals came up to him with a proposal. The proposal was to drive a vehicle from Los Angeles to New York.... Approximately on February 22 of that year, these individuals again approached Mr. Barahona and asked him if he would be willing to drive another vehicle from Los Angeles to New York." As instructed, the witness avoided the use of the term "other people" when describing who provided Barahona with airline tickets, simply stating that "Mr. Barahona ... was provided with an airline ticket and a vehicle."

The trial ended on August 11, 1994 when Sanin and his co-defendants were convicted on both counts charged in the indict-ment. After Sanin's conviction, he and several of his co-defendants moved to vacate their convictions and for a new trial. Sanin argued, *inter alia*, that the admission of the post-arrest statement of Barahona violated his due process, fair trial, and confrontation rights. The District Court denied the motion, noting that the statements had been properly redacted and a limiting instruction had been given to the jury. After resolving all post-trial motions, Sanin was sentenced to 200 months' imprisonment, to be followed by a five year term of supervised release. On direct appeal before this Court, Sanin renewed the claims made before the District Court, arguing, *inter alia*, that under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), his confrontation rights had been violated by the admission of Barahona's post-arrest statements. We rejected Sanin's claims by summary order. *See United States v. Sanin*, No. 96–1417, 1997 WL 280083, 113 F.3d 1230 (2d Cir. May 23, 1997) (unpublished). On March 23, 1998, the United States Supreme Court denied Sanin's petition for a writ of *certiorari. Sanin v. United States*, 523 U.S. 1024, 118 S.Ct. 1309, 140 L.Ed.2d 473 (1998).

On February 5, 1999, after Sanin asked that the District Court reappoint counsel to assist him with a § 2255 petition, the District Court requested that Sanin's counsel write to the court to state any basis for a § 2255 petition. In a letter dated February 10, 1999 Sanin's counsel responded that the only basis for a § 2255 petition was the application of the then recent Supreme Court decision in *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998). In that and a subsequent letter, Sanin's counsel argued that based on *Gray*, Sanin's confrontation rights were violated by the reference and deletion of the word "others" in Baraho-

na's post-arrest statement. On April 8, 1999 the District Court denied Sanin's request for reappointment of counsel to assist with a § 2255 petition, stating that *Gray* did not provide a basis for concluding that Sanin's Sixth Amendment rights had been violated. By letter dated April 15, 1999, Sanin requested that the District Court issue a certificate of appealability. That request was denied because, according to the District Court, no § 2255 petition had been filed. Sanin then requested that the District Court either issue a certificate of appealability or deem his previous submissions a § 2255 petition. On August 2, 1999, the District Court granted Sanin's request to consider the letters submitted by Sanin's counsel to be a timely § 2255 petition, but then denied that petition on the merits for the reasons stated in the District Court's April 8, 1999 order. The District Court also denied Sanin a certificate of appealability because Sanin had not made a substantial showing that he had been denied a constitutional right.

Sanin then submitted a motion to this Court requesting a certificate of appealability. By order dated April 12, 2000, we granted Sanin a certificate of appealability.

### DISCUSSION

In his present appeal, Sanin argues that his right to confront and cross examine adverse witnesses as guaranteed by the Confrontation Clause of the Sixth Amendment to the United States Constitution was denied when the District Court admitted the post-arrest statement of Barahona. Specifically, he contends that despite the redactions, admission of the Barahona statement was incriminating against him and that the District Court's limiting instruction was insufficient to mitigate the prejudicial effect. However, this issue was raised and fully considered on Sanin's direct appeal to this Court. In that appeal,

we summarily rejected Sanin's argument that his Sixth Amendment rights were violated because of the Barahona statement, finding that because the statements did not directly refer to Sanin, and because the District Court gave a limiting instruction to the jury, no prejudice to Sanin resulted. See *Sanin*, 1997 WL 280083, at *5. Therefore, as a threshold matter, we must consider whether Sanin is collaterally estopped from relitigating this issue.

■ It is well established that a § 2255 petition cannot be used to "relitigate questions which were raised and considered on direct appeal." *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir.1992); *see also United States v. Perez*, 129 F.3d 255, 260 (2d Cir.1997), *cert. denied*, 525 U.S. 953, 119 S.Ct. 384, 142 L.Ed.2d 318 (1998); *Riascos–Prado v. United States*, 66 F.3d 30, 33 (2d Cir.1995); *Douglas v. United States*, 13 F.3d 43, 46 (2d Cir.1993). If Sanin thus raises an issue that was dealt with on direct appeal, he will be procedurally barred from proceeding with the challenge. "Reconsideration is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." *Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir.1980), *cert. denied*, 450 U.S. 923, 101 S.Ct. 1375, 67 L.Ed.2d 353 (1981). While Sanin concedes, as he must, that we have already considered a challenge to the admission of the Barahona statement on his direct appeal, he contends that the Supreme Court decision in *Gray* was an "intervening change in the law." *Id.* Therefore, before we can address the merits of Sanin's appeal, we must first decide whether *Gray* can be considered a "new law" upon which Sanin can collaterally challenge issues previously decided on direct appeal. *Id.*

■ In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476

(1968), the Supreme Court held that post-arrest statements made by non-testifying co-defendants that facially incriminate a defendant are inadmissible because such statements violate the defendant's Sixth Amendment right to cross-examine adverse witnesses. The Supreme Court stated that "where the powerfully incriminating extrajudicial statements of a code-fendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial," a limiting instruction given by the trial court cannot eliminate the possibility of significant prejudicial effect. *Id.* at 135–36, 88 S.Ct. 1620. However, in *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Supreme Court considered the confession of a non-testifying co-defendant admitted during a joint trial which was redacted so that the names of all co-defendants were eliminated. The Court refused to apply *Bruton,* holding that "the Confrontation Clause is not violated by the admission of a nontestifying co-defendant's confession with the proper limiting instruction where . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211, 107 S.Ct. 1702. In such a situation, the confession is not so "powerfully incriminating" that a limiting instruction given by the District Court could not effectively eliminate any prejudicial effect. *Id.* at 208, 107 S.Ct. 1702.

*Gray* involved the interplay between *Bruton* and *Richardson.* In *Gray,* a confession written by a co-defendant that explicitly referred to the defendant was edited so that the defendant's name was replaced by the word "deleted" or a blank space. 523 U.S. at 197, 118 S.Ct. 1151. When the government's law enforcement witness read the confession to the jury, he said "deleted" wherever a blank space appeared. Then immediately after reading the confession, the witness

informed the jury that he arrested the defendant after taking the co-defendant's statement. The Supreme Court held that admission of such an "obviously redacted confession" violated *Bruton* because it "pointed directly to the defendant." *Id.* Thus, unlike *Richardson* where the redacted statement "became incriminating 'only when linked with evidence introduced later at trial,'" *Gray,* 523 U.S. at 196, 118 S.Ct. 1151 (quoting *Richardson,* 481 U.S. at 209, 107 S.Ct. 1702), the redacted confession in *Gray* "facially incriminat[ed]" the defendant and "involve[d] inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Id.* Moreover, the prosecutor "blatantly link[ed] the defendant to the deleted name" by highlighting the connection between the confession and the defendant's arrest. *Id.*

█ In *Gray,* the Supreme Court applied the rules announced in *Bruton* and *Richardson.* In doing so, it did not overrule prior decisions or alter doctrines employed by this Circuit. Nor did the decision "break new ground" or impose a "new obligation on the States or Federal Government," as is required to constitute a new law before a prisoner may seek retroactive application in a § 2255 petition. *Teague v. Lane,* 489 U.S. 288, 300, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See Figueroa v. Portuondo,* 96 F.Supp.2d 256, 273 n. 14 (S.D.N.Y.1999) ("*Gray v. Maryland* did not create law. It was but an application of the rule of *Bruton* to a factual pattern similar to that of *Bruton.*"); *but see United States v. Gio,* 58 F.Supp.2d 920, 922–24 (N.D.Ill.1999) (holding that *Gray* is a new rule of constitutional procedure but finding that it does not apply retroactively because it is not "a watershed rule of criminal procedure").

In addition, prior to *Gray,* this Circuit had already developed a body of law dis-

tinguishing redacted statements that directly refer to a defendant from statements that are properly redacted so that they do not prejudice the defendant. For example, in *United States v. Tutino*, 883 F.2d 1125, 1135 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990), we affirmed a conviction that was based, in part, on a statement of a co-defendant that was redacted so that it referred to "others," "other people," and "another person." We stated that "a redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's *Bruton* rights." *Id.* Similarly redacted statements have been upheld in *United States v. Alvarado*, 882 F.2d 645, 652–53 (2d Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990); *United States v. Smith*, 918 F.2d 1032, 1038 (2d Cir.1990), *cert. denied*, 498 U.S. 1125, 111 S.Ct. 1086, 112 L.Ed.2d 1191 (1991); and *United States v. Williams*, 936 F.2d 698, 700 (2d Cir.). But in *United States v. Danzey*, 594 F.2d 905, 918–19 (2d Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979), we vacated the conviction of a defendant because defendant's name had been replaced in a nontestifying co-defendant's statement by the term "blank," rather than a neutral pronoun. In *Danzey*, we recognized that "the ready inference that the name Danzey would 'fill in the blank' because Danzey was the co-defendant, it could readily be argued, violated appellant Danzey's right of cross-examination under the Confrontation Clause of the Sixth Amendment, as held in *Bruton* . . . ." *Id.* at 918.

Thus, decisions of this Court prior to *Gray* carefully distinguished between statements that facially or directly implicate a defendant, and statements that are properly redacted to protect the defendant's Sixth Amendment rights. These decisions, which collectively established precisely the same rule as later adopted by *Gray*, were available to Sanin during his direct appeal. Therefore, because the rule established by *Gray* was available to Sanin on direct appeal, it cannot fairly be said that *Gray* was an "intervening change in the law" that would have exonerated Sanin "had it been in force before the conviction was affirmed on direct appeal." *Chin*, 622 F.2d at 1092.

Therefore, because Sanin's arguments were considered previously, and because there has been no intervening change in the law entitling Sanin to revisit issues already fully litigated, we find that Sanin is procedurally barred from raising the issues presented in his current § 2255 petition. Because we conclude that Sanin is procedurally barred, we need not address the merits of his claim.

Accordingly, the judgment of the District Court is AFFIRMED.