**GOVERNMENT OF THE VIRGIN ISLANDS, Appellant**
**v.**
**OTTICE BRYAN, Appellee.**
**GOVERNMENT OF THE VIRGIN ISLANDS, Appellant**
**v.**
**SELVIN HODGE, ELADIO CAMACHO, KIRSTEN GREENAWAY,**
**Appellees**

GOVERNMENT OF THE VIRGIN ISLANDS v. BRYAN

Crim. App. No. 2001-256

District Court of the Virgin Islands

Division of St. Thomas and St. John

December 17, 2001

*For Appellant*: MICHAEL LAW, DOUGLAS JUERGENS, Assistant Attorney General, Department of Justice, St. Thomas, V.I.

*For Ottice Bryan, Appellee*: GEORGE HODGE, JR., ESQ., St. Thomas, V.I.

*For Selvin Hodge, Appellee*: LESLIE PAYTON, ESQ., St. Thomas, V.I.

*For Eladio Camacho, Appellee*: STEPHEN BRUSCH, ESQ., St. Thomas, V.I.

*For Kirsten Greenaway, Appellee*: BRUCE STREIBICH, ESQ., St. Thomas, V.I.

FINCH, *Chief Judge of the District Court of the Virgin Islands*; MOORE, *Judge, District Court of the Virgin Islands*, and DONOHUE, *Judge, Territorial Court, Division of St. Croix, Sitting by Designation.*

## MEMORANDUM OPINION

(December 17, 2001)

### I. INTRODUCTION

This appeal is before the Court on the sole issue of whether the trial court's order suppressing the Government of the Virgin Island's ["government" or "appellant"] redacted statements of non-testifying codefendants properly applied *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968), and its progeny. For the reasons set

forth below, we will vacate the trial court's order and remand this matter for further proceedings consistent with this memorandum opinion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On or about November 4, 1999, Duvalier Basquin ["Basquin"] was robbed and brutally murdered in the Bolongo Bay area of St. Thomas. During the investigation of the robbery and murder of Basquin, the following four suspects were questioned by the police: Ottice Bryan ["Bryan"], Selvin Hodge ["Hodge"], Eladio Camacho ["Camacho"], and Kirsten Greenaway ["Greenaway"] [collectively "appellees"]. There of the suspects gave written narrative statements to the police. Two of the suspects, Hodge and Camacho, acknowledged participation in certain acts and implicated each other as well as defendants Greenaway and Bryan. They claimed that Basquin was lured out to a remote place, then robbed and murdered. (*See* App. at 5-27). Greenaway gave an exculpatory statement. (*See id.* at 28).

Greenaway, Camacho, and Hodge each filed a motion for severance, based in part on *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968). The Territorial Court denied all three motions for severance, ruling that the defendants' Sixth Amendment rights could be protected by proper redaction of the statements. Accordingly, the court ordered the government to file copies of the statements it sought to admit.

## A. The Government's Original Redacted Statements of Greenaway, Hodge, and Camacho

The government submitted its first redacted version of Greenaway's, Hodge's, and Camacho's statements. (*See* App. at 49-77). The government's original redaction of Greenaway's statement consisted of a photocopy of her handwritten statement to the police. In its redaction, the government, using broad, blackout markings, covered over a question by the interrogator asking Greenaway what she would say if Hodge and Camacho told the police that she aided them in the robbery and murder of Basquin. (*Id.* at 51-54).

In its proposed redaction of Hodge's statement, the government again submitted a photocopied version of Hodge's original, handwritten statement, also containing blacked out text. In this version, the government substituted the phrases "someone," "somebody," "another,"

199

and other similar words and pronouns for the codefendants' names. For instance, Hodge originally said that, on the day that Basquin was murdered, "Otis, Eladio, Kirsten Greenaway and myself was at home." (*See* App. at 5). In the government's redacted version, the names of Hodge's co-defendants were marked over in heavy black, and his statement was changed to read "a few other people and myself was at home." (*Id.* at 55). The government also submitted a redacted version of Camacho's statement, similarly marked and edited. (*Id.* at 67-77).

Camacho, Greenaway, Bryan, and Hodge each objected to the government's initial redactions and submitted alternative redactions. (App. at 78-115). The trial judge held a hearing on September 12, 2001, to consider the defendants' objections.

## B. The Government's Second Set of Redacted Statements

Before the hearing, the government filed a second set of proposed redactions. (App. at 32-48). The government's second submission of Greenaway's statement was a photocopied, handwritten version that contained references to Bryan, Camacho, and Hodge by name. (*Id.* at 34-37). The second proposed redacted statement of Hodge was typed, and substituted the words "another," "someone," and "somebody" for the other defendants' names. This version also contained a physical description of Bryan, that, although not specifically naming him, referred to him as being "about 5'8" - 5'10". He has that Spanish breed hair, but short. He has a dark brown complexion." In addition, the redaction contained a specific reference to Bryan's address. (*Id.* at 38-42). The government also submitted an amended redaction of Camacho's statement that contained references to persons nicknamed "Tootsie" and "Kiki," and replaced the names of the codefendants with the words "someone" or "a person."[1] (*Id.* at 43-48).

## C. The Court-ordered Redactions

At the hearing, the trial judge considered each line of the government's second proposed redactions, and invited objections from the parties. The court ruled on each objection, and ordered the government to submit typed redactions consistent with its rulings that

---

[1] In his original statement to the police, Camacho stated that Hodge's nickname was "Tootsie" and that the "girl" who aided in the robbery and murder of Basquin went by the name "Kiki." (App. at 17).

any sentences containing direct references to the defendants, nicknames, physical descriptions, and the substituted pronouns be omitted. (App. at unnumbered 142-49).[2]

The government filed a timely notice of appeal, pursuant to V.I. CODE ANN. tit. 4, § 39(a)(1), and moved this Court to stay further proceedings. (See Government's Emergency Expedited Motion for Stay, September 14, 2001). This Court granted the government's motion to stay. (See Order, Crim. App. No. 2001-256 (D.V.I. App. Div. Sept. 14, 2001)).

## III. DISCUSSION

### A. Issues on Appeal

On appeal, the government argues that the Territorial Court abused its discretion in ruling that it could not admit into evidence redacted confessions that replaced the codefendants' names with non-identifying language. In addition, the government avers that the trial judge further abused his discretion by ordering that non-identifying factual information be redacted from the defendants' statements.

The defendants counter that the government's proposed redactions, substituting pronouns for the defendants' names, are insufficient in light of binding caselaw. They maintain that *Bruton* and subsequent cases prohibit references not only to a defendant's identity, but also to that defendant's existence. Appellees aver, therefore, that the trial court's amended redaction strikes an appropriate balance between protecting their Sixth Amendment rights and the administration of justice. In addition, Bryan and Camacho contend that this Court is without jurisdiction to consider this appeal because the suppressed evidence is not substantial proof of the charges against them.

The government replies that the trial court overreached and redacted statements that did not identify the codefendants. The government further argues that the trial court's ordered redactions render the statements nonsensical for use in establishing a conspiracy among the codefendants. Finally, the government maintains that this Court retains jurisdiction over its appeal.

---

[2] The pages of the Appendix are numbered until page 115, but are unnumbered after that. This memorandum cites to these subsequent pages as they have been counted by this Court.

## B. Standard of Review

■ This Court has jurisdiction to consider the judgments and orders of the Territorial Court in criminal cases. 4 V.I.C. § 33; Section 23A of the Revised Organic Act of 1954.[3] The government, pursuant to 4 V.I.C. § 39(a)(1), may appeal a pretrial order that suppresses evidence. *See Government of the Virgin Islands v. Christopher*, 990 F. Supp. 391, 393, 38 V.I. 193 (D.V.I. App. Div. 1997). Admission of evidence is reviewed for abuse of discretion. *Guardian Ins. Co. v. Joseph*, 31 V.I. 145, Civ. No. 1991-385 (App. Div. Oct. 25, 1994). When reviewing an order suppressing evidence, this Court reviews findings of fact for clear error. 4 V.I.C. § 33. We exercise plenary review over questions of constitutional law. *Maddox v. Government of the Virgin Islands*, 121 F. Supp. 2d 457, 459 (D.V.I. App. Div. 2000).

## C. Analysis

■ The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant to confront and cross-examine the witnesses against him or her.[4] *Richardson v. Marsh*, 481 U.S. 200, 206, 95 L. Ed. 2d 176, 107 S. Ct. 1702 (1987). Where two or more defendants are tried jointly, therefore, the pretrial confession of one cannot be used to implicate the other unless the confessing defendant takes the stand. *Id.*

In *Bruton,* two defendants accused of participating in the same crime were tried jointly. At trial, a witness testified that one of the defendants confessed to him that he and the other defendant committed the crime. 391 U.S. at 124. The trial judge permitted the admission of the confession into evidence, and instructed the jury that it should consider the confession as evidence only against the codefendant who had confessed and not against the defendant named in the confession. *Id.* at 125 n.2. The Supreme Court held that, despite the limiting instruction to the jury, the admission of this confession violated the Sixth Amendment rights of the named defendant because the confession posed a

---

[3] *See* Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2001), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2001) (preceding V.I. CODE ANN. tit. 1).

[4] The Confrontation Clause is made applicable to the Virgin Islands by section 3 of the Revised Organic Act, codified at 48 U.S.C. § 1561.

"substantial threat" to the non-confessing defendant's right to cross-examine the witnesses against him. *Id.* at 137.

In *Richardson,* the Supreme Court revisited the *Bruton* rule and addressed the issue of whether, in a joint trial, a nontestifying codefendant's confession, redacted to conceal the identity of another defendant, complied with the Confrontation Clause when other evidence presented at trial linked the defendant to the crime. 481 U.S. at 202. The state had redacted the confession of defendant Williams to "omit all reference" to the codefendant, Marsh, "indeed, to omit all indication that *anyone* other than ... Williams" and a third person had participated in the crime. *Id. at 203* (emphasis in original). The redacted confession indicated that Williams and the third person had discussed the crime while traveling in the front seat of a car. *Id.* at 203-04, n.1. Later during the trial, Marsh testified that she was in the back seat of the car. *Id.* at 204.

Recognizing that the confession, coupled with Marsh's testimony, may well have persuaded the jury that Marsh was involved in the crime, the Supreme Court determined that this redacted confession (and appropriate limiting instructions) was admissible in light of Bruton. *Id.* at 208. The Court reasoned that, whereas the codefendant's confession in *Bruton* expressly implicated the defendant as an accomplice, this redacted confession was "not incriminating on its face, and became so only when linked with evidence introduced later at trial." *Id.* The Supreme Court held, thus, that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211. The Court signaled that the lack of reference to a codefendant's existence was not the *sine qua non* of an admissible redaction by noting specifically that it expressed no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun. *Id.* at n.5. Replacing a codefendant's name with a neutral pronoun is undisputably a reference to the defendant's existence.

The Supreme Court next addressed "whether redaction that replaces a defendant's name with an obvious indication of deletion, such as a blank space, the word 'deleted,' or a similar symbol, still falls within *Bruton's* protective rule." *Gray v. Maryland,* 523 U.S. 185, 192, 140 L. Ed. 2d

294, 118 S. Ct. 1151 (1998). In *Gray,* codefendant Bell had confessed to the police that he, defendant Gray, and a third person brutally beat a man to death. *Id.* at 188. Bell and Gray were subsequently tried jointly for the murder. *Id.* The trial judge permitted a detective to read the redacted confession into evidence, substituting the words "deleted" or "deletion" where Gray's name appeared. *Id.* The detective then testified that he was able to arrest Gray based on Bell's statement. *Id.* at 188-89. The prosecution also introduced into evidence a printed copy of the confession with Gray's name omitted, leaving instead, a blank white space. *Id.* at 189.

The Court determined that this redacted confession, unlike the one in *Richardson,* was more akin to the confession in *Bruton* since it directly referred to Gray's existence. *See id.* at 192. Accordingly, the Court held that redacted confessions that simply substitute a defendant's name with an obvious blank space, a symbol, a word such as "deleted," or any other *similarly obvious* indications of alteration are inadmissible. *Id.* at 192 (emphasis added). The Court stated that such redacted statements were "directly accusatory," because a jury will often react to an unredacted confession and a confession such as one in *Gray* in the same manner, as a jury will often understand that the confession refers specifically to the defendant. *Id.* at 193-194.

The Court further distinguished between the blank spaces in the *Gray* redaction and the factual statements in *Richardson,* concluding that the latter did "not point directly to a defendant at all." *Id.* at 194. The Court cautioned, however, against a bright-line rule whereby all inferences the jury might make would be admissible, suggesting that confessions containing nicknames and unique physical descriptions would be excluded. *Id.* at 195 (citing *Harrington v. California,* 395 U.S. 250, 253, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969) (assuming a *Bruton* violation where confessions described codefendant as the "white guy" and gave a description of his age, height, weight, and hair color)). Instead, the obviousness of an inference that the statement refers to the defendant is critical. The *Gray* Court observed that the permissible statements in *Richardson* did not directly inculpate the non-confessing defendant, and only incriminated the defendant through inferences the jury could draw from evidence introduced later at trial. *Id.* at 196. According to the Court, however, the statements in *Gray,* even with the redaction, "obviously refer directly to someone, often obviously the defendant, and which

involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Id.*

The Supreme Court went on to note that redaction of a confession that uses a blank space, the word "delete," or a symbol, "normally is possible." *Id.* The Court in *Gray* examined the redacted statement at issue as it was read to the jury:

> "Question: Who was in the group that beat Stacey?"

> "Answer: Me, deleted, deleted, and a few other guys."

*Id.* The Court then proposed a hypothetical redaction. Why could the witness not, instead, have said:

> "Question: Who was in the group that beat Stacey?

> "Answer: Me and a few other guys."

*Id.* The opinion in *Gray* then pointed out that its proposed redaction was similar to the statement in *Richardson*, because, *inter alia*, "it did not indicate that it had been redacted." *Id.* at 197. We note that *Gray's* permissible redaction also refers to the existence of one or more possible codefendants without obviously or directly referring to codefendant Gray.

In a case arising from the Virgin Islands, *United States v. Richards*, the Court of Appeals for the Third Circuit recognized the foregoing proposed permissible redaction using neutral pronouns or non-identifying words. 241 F.3d 335, 341, 43 V.I. 337 (3d Cir.), (finding *Bruton* violation but holding it was harmless error), *cert. denied*, 533 U.S. 960, 150 L. Ed. 2d 770, 121 S. Ct. 2615 (2001). Defendants Richards and Greenaway were tried jointly for offenses stemming from the robbery of a Brinks armored van. The third robber, Stevens, who drove the van, confessed to being the "inside man" and identified Richards and Greenaway as his accomplices. *Id.* at 337. Greenaway was subsequently arrested, and he stated to police that he and an unnamed "friend" had committed the robbery. *Id.* at 337-38. Stevens continued to cooperate and testified at trial that he and Richards had planned the robbery for two weeks. *Id.* at 338. A Federal Bureau of Investigation agent then testified and, without objection from Richard's counsel, read the following part of Greenaway's statement into evidence:

> The first time I heard about the idea of robbing the Brink's armored van was when a friend, whom I do not wish to name, spoke to me about it. He and I talked and my friend told me it would be easy to rob the armored car since there was an inside man ... The next time I met with my friend was on the day of the robbery.

*Id.* at 338. The agent continued to read from Greenaway's statement, which contained additional references to his "friend." *Id.* The Court of Appeals held that this reading of Greenaway's confession violated *Bruton* because the references to his "friend" were "just as blatant and incriminating of Richards as the word 'deleted' in the *Gray* case." *Id.* at 341.

The *Richards* court acknowledged the permissible redaction proposed in *Gray* and noted that Greenaway's statement referred to only three participants in the crime: Greenaway, the "inside man," and his "friend." *Id.* The Court of Appeals nevertheless found that Greenaway's redacted statement was not like *Gray*'s permissible redaction "Me and a few other guys" because the "inside man" was easily identified so that the reference to "'my friend' sharply incriminated Richards, the only other person involved in the case." *Id.*

The redacted statements proposed by the government in this case fall somewhere between those in *Richardson* and *Gray*. Here, the government has proposed redacted statements that retain physical descriptions and nicknames of the codefendants and substitute pronouns for the defendants' names. We agree with the appellees that, in light of *Bruton* and *Gray*, including the defendants' nicknames and physical descriptions would identify particular defendants in violation of the rule established in those cases.

The more difficult question in this case is whether the use of pronouns or other neutral words or phrases in place of the codefendants' proper names would violate the Sixth Amendment's Confrontation Clause. Other courts have permitted such substitutions. *See United States v. Sanin*, 252 F.3d 79, 84-85 (2d Cir.) (finding no *Bruton or Gray* error where prosecutors used the phrases "several individuals" and "individuals" in lieu of codefendants' names), *cert. denied*, 534 U.S. 1008, 151 L. Ed. 2d 403, 122 S. Ct. 492, 2001 U.S. LEXIS 10192 (Oct. 29, 2001); *United States v. Logan*, 210 F.3d 820, 823 (8th Cir.) (en banc) (affirming conviction where the defendant's name was replaced by the phrase "another individual" "only once, and then only in the mouth of a

witness, not in the less ephemeral and potentially more damaging form of a writing"), *cert. denied*, 531 U.S. 1053, 148 L. Ed. 2d 562, 121 S. Ct. 659 (2000); *United States v. Tutino*, 883 F.2d 1125, 1135 (2d Cir. 1989) (affirming conviction based, in part, on a statement of a codefendant redacted so that it referred to "others," "other people," and "another person" instead of defendants), *cert. denied*, 493 U.S. 1081, 107 L. Ed. 2d 1044, 110 S. Ct. 1139 (1990);[5] *United States v. Massanova*, 1999 U.S. Dist. LEXIS 14932 at *6-13 (E.D. Pa. Sept. 21, 1999) (finding no *Bruton* violation where statement by codefendant that "to [cooperate] he would have to implicate close life long friends" was summarized by a detective at trial as "he would have to provide information about some friends" and the two defendants were actually cousins), *cert. denied*, 533 U.S. 930, 150 L. Ed. 2d 720, 121 S. Ct. 2553 (2001). *But see United States v. Long*, 900 F.2d 1270, 1279-80 (8th Cir. 1990) (finding a *Bruton* error where a codefendant's statement to an FBI agent replacing the defendant's name with "someone" was improperly admitted under *Bruton* because the codefendant's cross-examination of the agent "led the jury straight to the conclusion that 'someone' referred to [the defendant]").

We agree with those courts that read *Bruton, Richardson* and *Gray* as permitting the *non-obvious* substitution of pronouns and other neutral words and phrases in place of the codefendants' proper names or other directly identifying words. We believe that such redaction differs from the redacted statement in *Gray*, as it does not draw the jury's attention to the fact that a name was omitted and avoids inviting the jury to "fill in the blanks" with the defendants' names.

For instance, in *Logan*, the Court of Appeals for the Eighth Circuit affirmed a conviction in which a non-testifying codefendant's statement was redacted, substituting the phrase "another individual" for the defendant's name. 210 F.3d at 823. In so doing, the court distinguished this statement from the one in *Gray*, noting that in the latter case, the confession "quite obviously" had been redacted. *Id.* The *Logan* Court found, however, that any indication there had been a redaction was absent in its case, and that "[f]or all the jury knew, these were [the nontestifying codefendant's] actual words, not a modified version of

---

[5]    Although *Tutino* predates *Gray*, the Court of Appeals for the Second Circuit recently held that the rule established by *Tutino* and other similar cases was consistent with *Gray*. See *Sanin*, 252 F.3d at 85.

them." *Id.* The Court also noted that, "in our case, the allegedly offending phrase occurred only once," whereas the witness in *Gray* read the statement into evidence, saying the word "delete" four separate times. *Id.*

In applying this reasoning to the instant case, we conclude that the government's second set of redactions failed to adequately protect the Sixth Amendment rights of the codefendants because the statements would clearly indicate to a jury that they had been redacted. For instance, in his statement to the authorities, Hodge said:

> Yes, when we saw the taxi coming, we went into the buch [sic] and hid. The driver of the taxi could not see us. We saw when the taxi drove pass us. When the taxi got to the house it came to a stop. Kirsten got out and she paid the driver. She then began to walk towards the house as if that was really her house. The driver of the taxi had to backed [sic] into a turn around space. When the driver backed into the space to turn around, Otis rushed the driver's side of the taxi. He had jerked open the driver's door and stuck a knife to his neck. Otis told the driver to give him everything.

(App. at 7-8). The government proposed the following redaction:

> Yes, when we saw the taxi coming, we went into the bush and hid. The driver of the taxi could not see us. We saw when the taxi drove pass us. When the taxi got to the house it came to a stop somebody got out and she paid the driver. She then began to walk towards the house as if that was really her house. The driver of the taxi had to backed into a turn around space. When the driver backed into the space to turn around, someone rushed the driver's side of the taxi. Someone had jerked open the driver's door and stuck a knife to his neck. Someone told the driver to give someone everything.

(*Id.* at 39). The trial court, in its order, reduced this statement to:

> The driver of the taxi had to backed into a turn around space. The driver backed into the space to turn around.

(*Id.* at 142).

We find that the government's redaction violates the rule established in *Bruton* and extended in *Gray*. Although the government's version correctly omitted the defendants' proper names, it failed to

208

comply with the Sixth Amendment's Confrontation Clause because it implicated Greenaway by gender and the redactions were obvious. There are three male defendants and one female defendant, Greenaway. Under such circumstances, the use of the pronoun "she" in place of Greenaway's proper name would be like the use of the words "my friend" in *Richards*, as the jury would naturally tend to assume that Greenaway was the "she" to whom Hodge was referring.[6] Furthermore, the repetitive and awkward use of the word "someone" makes this passage appear as obviously redacted as the statement in *Gray* that used the word "deleted."

Although we find that the government's redaction violated *Bruton* and *Gray*, we believe that the trial court went too far in attempting to protect the defendants' Sixth Amendment rights. The court-ordered redaction eviscerated any value the statements might have for establishing the government's conspiracy charge. This Court believes that there exists a middle ground between the government's proposed redactions and those ordered by the trial judge that would be consistent with *Bruton*, *Richardson*, and *Gray*. Redaction or summarization could be done to remove any references to the defendants as well as any indication of redaction. For example, the government could redact Hodge's statement to read something like:

> Yes, when we saw the taxi coming, we went into the bush and hid. The driver of the taxi could not see us. We saw when the taxi drove pass us. When the taxi got to the house it came to a stop. The passenger go out and paid the driver and began to walk towards the house. The driver of the taxi had to backed into a turn around space. When the driver backed into the space to turn around, one of us rushed the driver's side of the taxi and had jerked open the driver's door and stuck a knife to his neck and told the driver to give over everything.

We believe that this approach would permit the redaction of most of the defendants' statements in a manner consistent with *Bruton* and its

---

[6] *See also Harrington*, 395 U.S. at 253. In *Harrington*, a white defendant was tried with three black codefendants. The confession of a non-testifying codefendant that did not name him but referred to his as "the white guy" was admitted. *Id.* The Court assumed that this had the same effect as "pointing and shouting" that the person to whom the statement referred was the white defendant. *Id.*

progeny. This approach could also be applied even to those portions of the statements containing multiple references to the other defendants. For example, a portion of Camacho's original statement reads as follows:

> Otis and myself was catching a ride to go country and we saw Tootsie with the truck. He picked us up and we went to play pool, while there Tootsie said he was coming back, when he came back he had Kiki with him. We then left together up to the Market Square where Kiki catch the taxi, and while we was going out in the truck Tootsie he said he was going to robb [sic] the taxi driver because he owes him money. He said he did not want to deal with him in the Market Square because he did not want anybody in his business, so when he reach Bologna Bay he is going to robb the taxi driver.

(App. at 26-27).

The government's redacted version of this portion of Camacho's confession reads:

> Someone and myself was catching a ride to go country and we saw "Tootsie" with the truck. A person pick us up and we went to play pool, while there "Tootsie" said a person was coming back, when a person came back, a person had "Kiki" with a person, we then left together up to the Market Square, where "Kiki" catch the taxi, and while we was going out in the truck, "Tootsie," a person said a person, was going to rob the taxi driver because he owes a person money. A person said a person did not want to deal with him in the Market Square because a person did not want anybody in his business, so when he reach Bolongo Bay, a person is going to rob the taxi driver.

(*Id.* at 48). There are at least thirteen references to "someone" or "a person" in this one paragraph, not including the additional redaction that would be necessary in order to omit the references to the nicknames "Tootsie" and "Kiki." Due to the repetitive use of these pronouns and the awkward reading of this passage, it is difficult to imagine that a jury would not be able to discern that this statement had been redacted to omit the names of the persons who were involved. In this sense, these redactions are too similar to the use of the word "deleted" in *Gray.*

210

The trial court's ordered redaction of this part of Camacho's statement, on the other hand, omitted this response in its entirety. (*Id.* at unnumbered 145-47). Although this obviously would protect the other defendants' rights, we find that the trial court again abused its discretion in extending the *Bruton* rule too far. Even in this instance, redaction or summarization could be done in such a way as to remove any references to the defendants as well as any indication of redaction. Why, for example, could the government not redact Camacho's statement to read:

> Some others and myself left together up to the Market Square, where one catch the taxi, and while we was going out in the truck, another talked about going to rob the taxi driver when he reach Bolongo Bay.

Redaction in this manner would permit the government to enter into evidence information to prove its conspiracy charge, while at the same time protecting the rights of the codefendants by neither identifying them nor indicating to the jury that the statement has been redacted.

Finally, we note that the record does not indicate exactly how the government plans to offer these statements into evidence. It is not clear whether the government intends to have the redacted statements read *verbatim* into the record, and/or the written redactions introduced as evidence, and/or have the police officer who took them summarize the redacted contents of the statements for the jury. The latter option by oral summary allows redaction that avoids both references to specific defendants and indications of obvious redaction. *See, e.g., Sanin*, 252 F.3d at 82 (permitting the prosecution's witness to refer to the defendants as "individuals" instead of their proper names); *Tutino*, 883 F.2d at 1134-35 (affirming conviction where redaction read into evidence summarized defendant's statement). For instance, in *Tutino*, defendant Tutino gave an admission in which he inculpated codefendants Guarino and Larca in a drug trafficking conspiracy. *Id.* At trial, the prosecution's witness introduced the following redacted version of Tutino's statement by oral testimony:

> In substance, Ralph Tutino told me that he and others were involved in [two] heroin transactions on March 19, 1987[,] and December 27, 1986. In respect to the transaction on March 19th, 1987, Tutino stated that he had received money from Vincent Cafaro earlier in

the day and then had gone on received a package from other people, and then returned that package to Vince Cafaro.

*Id.* at 1135. Such an approach, of course, would require that the government, and possibly the trial judge, properly instruct the witness to conform her or his testimony to the redaction guidelines we have lineated in this opinion. *See Sanin*, 252 F.3d at 82 (finding no *Bruton* error where prosecution and trial judge instructed the witness not to use defendants' proper names or words that may implicate them).

## IV. CONCLUSION

We agree with the appellees that the government's proposed redactions insufficiently protect the Sixth Amendment rights of the defendants in light of *Bruton* and *Gray*. We also agree with the government that the trial court overreached and abused its discretion in protecting those rights. We hold that there exists a middle ground between the government's proposed redactions and those ordered by the trial judge, in which key aspects of the statements may be offered into evidence while still protecting the constitutional rights of the appellees. Accordingly, we will vacate the Territorial Court's order suppressing the government's redacted statements, and will remand this matter for additional proceedings consistent with this memorandum opinion.