United States v. Jass

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: April 8, 2008                    Decided: June 16, 2009)

Docket Nos. 06-4899-cr (L), 06-4951-cr (con)

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

MARIAN JASS, KENNETH LEIGHT,

*Defendants-Appellants*.

B e f o r e :

WALKER, CABRANES, and RAGGI, *Circuit Judges*.

Appeal from judgments of conviction for conspiracy to transport and actual

transportation of minors in interstate commerce for the purpose of engaging in and producing

visual images of sexual activity, and for possession of child pornography. Most of

defendants' challenges are discussed and rejected in a summary order issued today. This

opinion addresses defendant Jass's arguments that (1) her Sixth Amendment right to

confrontation was violated by the introduction at trial of defendant Leight's redacted

-1-

confession, and (2) her below-Guidelines sentence was infected by procedural error because the United States District Court for the Southern District of New York (Stephen C. Robinson, *Judge*) applied an unwarranted two-level enhancement for using a computer to solicit sexual activity with a minor in calculating her Sentencing Guidelines range, see U.S.S.G. § 2G2.1(b)(3)(B)(ii). We reject the first argument as without merit, concluding further that any error would have been harmless. As to the second argument, we agree that the § 2G2.1(b)(3)(B)(ii) enhancement was unwarranted in this case. Nevertheless, the error was harmless because the district court clearly stated that it would have imposed the same below-Guidelines sentence in any event.

AFFIRMED.

---

MARCIA S. COHEN, Assistant United States Attorney (John P. Collins, Jr., Diane Gujarati, Assistant United States Attorneys, *on the brief*), *for* Michael J. Garcia, United States Attorney for the Southern District of New York, New York, New York, *for Appellee*.

COLLEEN P. CASSIDY, Federal Defenders of New York, Inc., Appeals Bureau, New York, New York, *for Defendant-Appellant Marian Jass*.

LARRY SHEEHAN, Law Office of Larry Sheehan, Esq., Bronx, New York, *for Defendant-Appellant Kenneth Leight*.

---

REENA RAGGI, *Circuit Judge*:

Defendants Marian Jass and Kenneth Leight appeal from judgments of conviction entered after a joint trial before a jury in the United States District Court for the Southern

District of New York (Stephen C. Robinson, *Judge*), at which they were found guilty of one count of conspiracy to transport minors in interstate commerce with the intent of (1) having the minors engage in illegal sexual activity, and (2) producing a visual depiction of a minor engaged in such illegal activity, see 18 U.S.C. § 371; two counts of actual transportation of a minor in interstate commerce with the intent to engage in criminal sexual activity, see id. § 2423(a); and one count of sexual exploitation of a child, see id. § 2251(a). The victims of these crimes were Leight's adolescent daughter ("Victim 1" or "daughter") and her sixth-grade classmate ("Victim 2"). In addition, Leight was convicted of two counts of possession of child pornography. See id. § 2252A(a)(4)(B). Jass and Leight were sentenced principally to 65 years' and 115 years' imprisonment, respectively, and are currently serving these sentences.

We discuss and reject the majority of defendants' appellate challenges in a summary order issued today. See United States v. Jass, --- F. App'x --- (2d Cir. 2009). In this opinion we address two additional arguments raised by Jass that merit more extensive discussion. First, Jass argues that her Sixth Amendment right to confrontation, as discussed in Bruton v. United States, 391 U.S. 123 (1968), and its progeny, was violated by the admission at trial of an inculpatory statement by Leight in which references to Jass were redacted and replaced by neutral pronouns or references to "another person." We reject this argument on its merits and, moreover, conclude that, even if we were to identify error, it was harmless beyond a reasonable doubt in light of the other overwhelming evidence of Jass's guilt. Second, Jass

contends that the district court committed procedural error at sentencing by applying a two-level enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2G2.1(b)(3)(B)(ii) to the calculation of her Sentencing Guidelines range. We agree that § 2G2.1(b)(3)(B)(ii) was not properly applied to Jass's Guidelines calculation, but here again we conclude that any error was harmless because the district court clearly stated that it would have imposed the same below-Guidelines sentence even absent the disputed two-level enhancement.

Thus, for the reasons stated in this opinion and the contemporaneous summary order, we affirm defendants' judgments of conviction.

## I.     Background

Mindful that two children are the victims of the crimes of conviction, we do not recount in detail the sordid circumstances of this case. Rather, we describe only those facts relevant to the two issues addressed in this opinion, viewing the evidence, as we must, in the light most favorable to the government. See, e.g., Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); United States v. Quinones, 511 F.3d 289, 292 (2d Cir. 2007).

### A.     The Admission of Leight's Redacted Statement

Jass and Leight were convicted on multiple conspiratorial and substantive counts of sexual abuse involving Leight's 12-year old daughter, Victim 1, and her similarly aged friend, Victim 2. Because Jass's Confrontation Clause challenge to the admission of Leight's redacted statement relates primarily to evidence involving Victim 2, we focus our

background discussion on that evidence.[1]

      1.      Defendants' Abuse of Victim 2

      a.      The Preliminary Abuse in New York

      (1)      The Car Incident

Jass and Leight first met Victim 2 when the girl was visiting Leight's daughter at the family home in Rockland County, New York. After one such visit, when Leight was driving Victim 2 back to her own home, Leight engaged the child in a sexually explicit conversation and then offered her money to perform a sexual act on him. Toward this end, Leight had Victim 2 join him in the car's rear seat where he proceeded to instruct her in how to stroke his penis. When the child indicated that she wanted to stop, Leight warned her that if she ever told her mother what had happened, she would not be allowed to visit further with Leight's daughter.

      (2)      Abuse in the Leight Home

The next time Victim 2 was at the Leight home, Leight showed the girl pornographic computer images of children engaging in sexual acts with adults.[2] As this activity was

---

[1] As to Victim 1, we note simply that the trial evidence showed that Leight began sexually molesting his daughter when she was four years old and that he continued to do so for eight years, up until the time of his arrest. Jass became romantically involved with Leight and entered his household when Victim 1 was approximately eight or nine years old, and Jass immediately joined Leight in subjecting the child to frequent sexual abuse.

[2] Over the years, Leight had also shown such pornography to his daughter to convince her that sexual activity between children and adults was "normal" and, thus, to groom her for the sexual abuse she experienced.

occurring, Jass entered the room, whereupon the two adults took Victim 2 into their bedroom and suggested that the child join them in various sexual activities. Jass proceeded to instruct Victim 2 in means of sexually stimulating Leight, and Jass herself performed sexual acts on Victim 2. Jass also showed Victim 2 certain sexual devices and urged the child to use them to "practice" sexual intercourse. Following these activities, Leight placed some cash in an envelope, which he identified for Victim 2 as her remuneration. Leight said that he would safeguard the money for the child because sudden possession of the cash might arouse her mother's suspicions.

(3) Jass Solicits Victim 2 To Travel to New Jersey

On another visit by Victim 2 to the Leight home, Jass and the child spent time alone watching a pornographic movie. Later that same day, Victim 2 accompanied Jass, Leight, Leight's daughter, and Leight's son on a trip to a nearby shopping mall. There, Leight gave Victim 2 some of the money he had purportedly set aside for her, which the child spent. Later still, when Jass drove Victim 2 home, Jass proposed to take the child on an overnight trip to another shopping mall in Rockaway, New Jersey. Although Victim 2 understood that Leight's daughter would not be included in this trip, the girl represented otherwise to her mother in order to secure approval for the outing.

b. Jass and Leight Abuse Victim 2 in New Jersey

On October 24, 2004, Jass drove Victim 2 to the Rockaway Mall. After some shopping, Jass and the child checked into a nearby Hilton Hotel where Leight soon joined

them.  He brought with him a blender, various bottles, and a camera.  The adults took Victim 2 back to the mall where they proposed further paid sexual activity to the child and then proceeded to give her money and to encourage her to buy suggestive underwear at a lingerie store.

Upon the trio's return to their hotel room, Leight used the blender to make drinks for all of them.  Jass and Leight then engaged in vaginal and anal intercourse, instructing Victim 2 to watch and learn from what they did.  Leight offered Victim 2 extra money if she would agree to be photographed engaging in sexual activities.  Thereafter,  Leight and Jass each took pictures while the other performed sexual acts with the child.  Although Leight offered to pay Victim 2 still more money if she would have intercourse with him, the child refused. The adults and the child showered together and slept in the same bed that night.

Upon Victim 2's return home the following day, her mother discovered some of the suggestive underwear that had been purchased in New Jersey.  After speaking with her daughter about the trip, the mother reported Jass and Leight to New York police.

### 2. The Search of the Leight Home and Defendants' Incriminating Statements

On November 3, 2004, FBI agents executed a search warrant at the Leight home and found various items described by Victim 2.  These included some of the underwear purchased in New Jersey as well as the blender and drink mixes brought to the hotel by Leight.  Also seized were the sexual devices that defendants had shown Victim 2 and a

number of pornographic videotapes.  As a consequence of the search, agents placed Jass and Leight under arrest.

### a. Jass's Statement

In the course of the FBI's search, Jass acknowledged that she and Leight had taken Victim 2 to the Rockaway Mall, and she identified a thong undergarment as an item bought by Victim 2 on that trip.  Jass further identified certain seized toiletries as having come from the hotel that the three had stayed in during the trip.  Jass's statements were admitted at trial in redacted form, with the phrase "other person" substituted for Leight's name.  Neither defendant challenges the admission of these statements on appeal.

### b. Leight's Statement

#### (1) The Unredacted Admission

After Leight's receipt of Miranda warnings, he waived his right to remain silent and agreed to answer agents' questions.  Describing the Rockaway Mall trip, Leight stated that he and Jass took Victim 2 to that mall in October 2004, and that he gave the child money to spend there.  After initially denying any sexual involvement with Victim 2, Leight admitted performing sexual acts with her during the trip.  Specifically, he described how he and Jass unsuccessfully attempted to have intercourse while the child watched.  He further stated that he and Jass had each taken photographs of Victim 2 in various sexual poses while all three of them were nude.  Leight explained that the pictures were somehow inadvertently erased from his digital camera.  Finally, Leight stated that he asked Victim 2 not to tell anyone what

-8-

had happened in New Jersey.

(2)     The Redacted Statement

Before trial, Jass moved for a severance, arguing that the admission of Leight's post-arrest confession at a joint trial would violate her Confrontation Clause rights as recognized in Bruton v. United States, 391 U.S. 123.  Opposing severance, the government proposed to redact Leight's statement, substituting neutral pronouns or the phrase "another person" for any references to Jass.  The district court found that such redaction and substitution would adequately avoid Bruton error, and it denied severance.  Thus, at trial, an FBI agent testified to the following redacted account of Leight's post-arrest admissions:

- "Mr. Leight told me that he and another person had taken [Victim 2][3] to the Rockaway Mall in New Jersey." Trial Tr. at 223.

- "Mr. Leight told me that they went, after shopping at the mall, he and the other person and [Victim 2] returned back to the hotel."  Id.

- "Mr. Leight stated to me that [Victim 2] kissed him and the other person."  Id.

- "Mr. Leight told me that the three of them were nude.  Mr. Leight also told me that he and the other person attempted to have sexual intercourse while [Victim 2] was watching and again they were nude at the time.  However, they were unable to have sexual intercourse because he did not maintain an erection."  Id. at 224.

- "Mr. Leight told me that he took pictures of [Victim 2] and the other person in various sexual poses with the digital camera.  Mr. Leight also told me that the other person took pictures of he and [Victim 2] in various sexual poses with the digital camera."  Id. at 225.

---

[3] We substitute "Victim 2" for the child's first name, testified to at trial.

-9-

• "Mr. Leight told me that he and the other person and [Victim 2] were able to view the photographs on the digital camera." Id.

In the course of this testimony, the district court gave the jury the following limiting instruction:

Ladies and gentlemen, let me just interrupt . . . to tell you about this testimony you've just heard. This testimony is to be received by you only against Mr. Leight. To the extent that you find the testimony credible and worthy of your weight, it can only be used in your determination of whether or not Mr. Leight is guilty of any of the crimes charged and cannot in any way be used by you in your consideration of the charges against Ms[.] Jass.

Id. at 224. In its final charge to the jury, the district court reiterated this instruction as follows:

There has been evidence that each of the defendants made certain statements to law enforcement . . . . You are cautioned that the evidence of one defendant's statements to law enforcement authorities . . . may not be considered or discussed by you in any way with respect to the other defendant on trial. Kenneth Leight's statements may only be considered by you with respect to Kenneth Leight's guilt or nonguilt.

Id. at 775-76.

The jury found both defendants guilty of all crimes charged.

B.     The U.S.S.G. § 2G2.1(b)(3)(B)(ii) Enhancement

In its Presentence Investigation Report ("PSR") on Jass, the Probation Department recommended that a two-level enhancement be applied to the calculation of her offense level pursuant to § 2G2.1(b)(3)(B)(ii) because defendants had "used a computer to solicit the victim to engage in sexual activity." PSR ¶ 56. Jass contested the applicability of this

-10-

enhancement, arguing that the plain language of the guideline – "use of a computer . . . [to] solicit participation with a minor in sexually explicit conduct," U.S.S.G. § 2G2.1(b)(3)(B)(ii) – did not encompass solicitation <u>of</u> a minor but, rather, was intended to apply to solicitation of a third party's participation in sexually explicit conduct <u>with</u> a minor.

The district court identified the question of § 2G2.1(b)(3)(B)(ii)'s applicability as a difficult one, but applied the enhancement, explaining as follows:

> I think we're going to give the Second Circuit their chance to rule on this. I'm going to find that the section does apply, although as in many statutes it could have been more clearly written. But I read this, I read 2G2.1(b)(3)(B)(ii) to refer to a situation in which the computer is used in order to garner the participation of sex – in sexually explicit conduct with a minor or others. I do think it is more broad, it tends to be more broad than section [2G2.1(b)(3)(B)](i). They could have been more clear about exactly what they intended by either adding the words of a third party or they could have written the words by or with a minor so we would have known clearly what they intended. But I'm going to find that in looking at the section as a whole, it does make sense that what they were trying to do here was carve out something more broad than was carved out in [sub]section [(i)]. So they wrote it in this inelegant fashion.

Sentencing Tr. at 44.

With a total offense level of 44 and a Criminal History category of I, Jass's Guidelines range provided for life imprisonment. The statutory maximums for her crimes of conviction, running consecutively, provided for 95 years' incarceration. The court exercised its discretion to sentence Jass to a non-Guidelines sentence totaling 65 years' imprisonment. The district court explained that its decision was intended to reflect that Jass's role in the criminal scheme was less than that of Leight, "the planner . . . the ringmaster . . . [who]

-11-

clearly directed the activity." Id. at 53. Nevertheless, the court concluded that a severe sentence was called for because Jass's participation in the charged crimes was willing and extensive: "she participated in all ways imaginable, from engaging in sexual activity with these minor children, to grooming them, getting them to the event and worse." Id. The district court expressly stated that its decision to impose a 65-year term would be the same even if the § 2G2.1(b)(3)(B)(ii) enhancement were not applicable to the calculation of Jass's Guidelines range:

> I'll also just note for the record that the sentence that I have given would not have changed either in terms of the guideline recommended sentence or in terms of the actual sentence that I gave regardless of how the issue of the two-point enhancement under 2G2.1 ultimately works out. . . . [U]nder either a 44, 43[,] or 42 [base offense level], just so the record is clear, I would give the same sentence.

Id. at 56-57.

## II. Discussion

### A. Jass's Confrontation Clause Challenge

Jass asserts that the admission of Leight's confession at their joint trial violated her Sixth Amendment right to confrontation as recognized in Bruton v. United States, 391 U.S. 123. Jass argues that the substitution of neutral pronouns or words such as "another person" for her own name in Leight's confession – a practice previously approved by our court, see, e.g., United States v. Williams, 936 F.2d 698, 700 (2d Cir. 1991) – was inadequate to avoid this violation in light of the Supreme Court's application of Bruton in Gray v. Maryland, 523

U.S. 185 (1998). We review "[a]lleged violations of the Confrontation Clause . . . de novo, subject to harmless error analysis." United States v. Vitale, 459 F.3d 190, 195 (2d Cir. 2006).

### 1. The Relevant Law

#### a. *Bruton* and its Progeny

The Confrontation Clause of the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The crux of this right is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand against the defendant and is available for cross examination." Ryan v. Miller, 303 F.3d 231, 247 (2d Cir. 2002). Where such accusatory statements are admissible at a trial against some defendants but not others, the law recognizes that a trial court's instruction to a jury to consider the statements only in evaluating the guilt of the defendants against whom they are admissible is generally sufficient to eliminate any Confrontation Clause concern with respect to other defendants. As the Supreme Court explained in Richardson v. Marsh, 481 U.S. 200 (1987), "[o]rdinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant." Id. at 206. The law "almost invariabl[y] assum[es]"

that jurors follow such limiting instructions. Id. (collecting cases).[4]

Nevertheless, in Bruton v. United States, 391 U.S. 123, the Supreme Court identified an exception to this assumption. It determined that in joint trials, where a non-testifying defendant's confession specifically inculpates a co-defendant, "the risk that the jury will not, or cannot, follow instructions" to limit its consideration of the evidence only as against the declarant "is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Id. at 135. The Court held that, "where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant," are admitted at a joint trial, courts "cannot accept limiting instructions as an adequate substitute for [the defendant's] constitutional right of cross-examination." Id. at 135-37.

In Bruton, the Supreme Court acknowledged that some lower courts had sought to minimize the identified concern by "requir[ing] deletion of references to codefendants where practicable" when admitting a confession solely against a non-testifying defendant declarant. Id. at 134 n.10 (collecting cases). It did not, however, express any view as to the adequacy of this procedure to avoid a Confrontation Clause violation.

Almost two decades passed before the Supreme Court addressed the redaction issue

---

[4] As the Supreme Court explained in Richardson v. Marsh, the general "rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process." 481 U.S. at 211.

in 1987 in <u>Richardson v. Marsh</u>, 481 U.S. 200. There, the Court held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." <u>Id.</u> at 211. It reasoned that the "narrow exception" <u>Bruton</u> had created did not extend to cases where, through redaction, the confession was no longer "incriminating on its face, [but] became so only when linked with evidence introduced later at trial." <u>Id.</u> at 208. The Court explained:

> Where the necessity of such linkage is involved, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence. Specific testimony that "the defendant helped me commit the crime" is more vivid than inferential incrimination, and hence more difficult to thrust out of mind. . . . [W]ith regard to inferential incrimination the judge's instruction may well be successful in dissuading the jury from entering onto the path of inference in the first place, so that there is no incrimination to forget. In short, while it may not always be simple for the members of a jury to obey the instruction that they disregard an incriminating inference, there does not exist the overwhelming probability of their inability to do so that is the foundation of <u>Bruton</u>'s exception to the general rule.

<u>Id.</u> The Court, however, was careful to express "no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." <u>Id.</u> at 211 n.5.

Our court nevertheless soon derived from <u>Richardson</u>'s reasoning the conclusion that "a redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may

-15-

be admitted without violating a co-defendant's Bruton rights." United States v. Tutino, 883 F.2d 1125, 1135 (2d Cir. 1989) (approving substitution of neutral words "others," "other people," and "another person" for names of co-defendants in confession of non-testifying defendant). Since Tutino, we have reiterated this holding many times. See United States v. Yousef, 327 F.3d 56, 149 (2d Cir. 2003) (upholding redaction of co-defendant's name to "my neighbor"); United States v. Kyles, 40 F.3d 519, 526 (2d Cir. 1994) (upholding redaction of co-defendant's name to "he"); United States v. Williams, 936 F.2d 698, 701 (2d Cir. 1991) (upholding redaction of co-defendant's name to "this guy"); United States v. Benitez, 920 F.2d 1080, 1087 (2d Cir. 1990) (upholding redaction of co-defendant's name to "friend").[5]

---

[5] Our Tutino line of precedents should not be understood to hold that Bruton concerns can invariably be resolved by the substitution of neutral pronouns for redacted names. As we have observed, "the line between testimony that falls within Bruton's scope and that which does not is often difficult to discern." United States v. Lung Fong Chen, 393 F.3d 139, 149 (2d Cir. 2004). The critical inquiry is always whether introduction of a confession at a joint trial presents an "overwhelming probability" that the jury will not be able to follow an instruction limiting consideration of the confession to the declarant defendant. Richardson v. Marsh, 481 U.S. at 208. In circumstances where a court concludes that no redaction can overcome this probability, only two options are available: severance or exclusion of the confession at a joint trial.

Where redaction is employed to avoid Bruton concerns, however, we urge district courts, wherever possible, to eliminate completely from a confession any mention of a non-declarant defendant's existence, as in Richardson v. Marsh. See id. at 211; United States v. Castro, 813 F.2d 571, 576-77 (2d Cir. 1987) (observing that while redactions that completely eliminate any mention of co-defendant undoubtedly change meaning of statement somewhat, they are permissible as long as "[t]he gist of [the declarant defendant's] statement [is] presented without unduly prejudicing either the right of [the co-defendant] to avoid being implicated by a [declarant] defendant's out-of-court statement, or the right of [the declarant defendant] to have his conduct and statement presented in context"). Neutral pronoun substitution should be employed only when complete redaction would distort the confession, for example, by "exclud[ing] substantially exculpatory information, or chang[ing] the tenor

-16-

b. *Gray v. Maryland*

In 1998, the Supreme Court decided Gray v. Maryland, in which it considered whether

Bruton's protective rule applied to the admission at a joint trial of a redacted confession in

which the non-declarant defendant's name was replaced with "a blank space or the word

'deleted.'" 523 U.S. at 188. Concluding that such a clumsy redaction was inadequate to

avoid Bruton's Confrontation Clause concern, the Court explained: "Redactions that simply

replace a name with . . . obvious indications of alteration . . . leave statements that,

considered as a class, so closely resemble Bruton's unredacted statements that, in our view,

the law must require the same result." Id. at 192. In distinguishing such unsatisfactory

redactions from the type approved in Richardson, the Supreme Court did not draw a bright

line between redactions that eliminated any reference to a co-defendant's existence, as in

Richardson, and those that did not. Rather, it focused on the inference (or "link") that would

be necessary for the jury to connect the redacted statement to the co-defendant. See id. at

___

of the utterance as a whole." United States v. Yousef, 327 F.3d at 150 (internal quotation marks omitted); see United States v. Alvarado, 882 F.2d 645, 651 (2d Cir. 1989) (noting that limits on redaction that potentially change statement's meaning stem from "rule of completeness").

In this case, complete redaction would have changed the substance of Leight's confession because acknowledgment of a confederate was critical to proving that Leight's admission was to conspiratorial, as well as substantive, sexual abuse – both charged crimes. In such circumstances, where complete redaction raises completeness or fairness concerns, we expect that district courts will employ neutral word substitution carefully and only to the extent necessary to address these concerns. Moreover, we expect courts to ensure that, in the end, there is no overwhelming probability that the jury will be unable to follow a limiting instruction to consider the confession only as against the declarant defendant and not at all against co-defendants.

195-96. The Court observed that

> Richardson's inferences involved statements that did not refer directly to the defendant himself and which became incriminating only when linked with evidence introduced later at trial. The inferences at issue here [in Gray] involve statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial.

Id. at 196 (internal citation and quotation marks omitted).

While thus concluding that replacing a defendant's name with an obvious blank or "deleted" reference was insufficient to avoid Bruton error, the Supreme Court indicated that substituting neutral words might well pass constitutional muster. Discussing the unsatisfactory redaction of a statement that named names to "Me, deleted, deleted, and a few other guys," the Court asked, "Why could the witness not, instead, have said: . . . . 'Me and a few other guys.'" Id.

### 2. Leight's Redacted Confession Did Not Violate Jass's Right to Confrontation

Relying on Gray, Jass contends that substitution of neutral pronouns or the term "another person" for her own name at various points in Leight's confession "was only the most technical redaction and was utterly insufficient . . . to eliminate the statement's obvious incrimination of [Jass]," or to avoid a Confrontation Clause violation. Appellant Jass's Br. at 45. Jass argues that our pre-Gray case law upholding the substitution of neutral words for a defendant's name in such confessions cannot save the redaction at issue because Gray

-18-

effectively overruled that precedent and established that "any redaction that refers directly to the involvement of one other person, where there is one other defendant on trial, violates Bruton." Id. at 46-47.  We are not persuaded.

      a.    *Gray* Did Not Overrule This Circuit's Caselaw Regarding Neutral Word Substitution as a Means To Avoid *Bruton* Concerns

      (1)    *Gray* Did Not Generally Overrule this Circuit's Case Law

In United States v. Sanin, 252 F.3d 79 (2d Cir. 2001), this court considered and rejected the argument that Gray generally overruled our Tutino line of precedents.  See id. at 84 (observing that Gray "did not overrule prior decisions or alter doctrines employed by this Circuit").  As Jass recognizes, this panel is bound by prior decisions of this court unless and until the precedents established therein are reversed en banc or by the Supreme Court. See United States v. Frias, 521 F.3d 229, 232 n.3 (2d Cir. 2008).  There has been no such action to prompt reconsideration of our holding in Sanin that "[i]n Gray, the Supreme Court applied the rules announced in Bruton and Richardson" but "did not . . . break new ground or impose a new obligation on the States or Federal Government."  Id. at 84 (internal quotation marks omitted).

Indeed, Sanin noted that our pre-Gray precedents tracked the same line between sufficient and insufficient redactions that the Supreme Court ultimately drew in Gray.  See id. at 84-85.  Specifically, in United States v. Danzey, 594 F.2d 905 (2d Cir. 1979), this court

-19-

held that the substitution of the word "Blank" for a defendant's name in a declarant co-defendant's confession presented Bruton concerns because the term "Blank" "made it certain" that the jury knew that the redacted name was that of the defendant. Id. at 918 (internal quotation marks omitted). Thus, Danzey anticipated by almost two decades Gray's holding that redacted confessions "that simply replace a name with . . . obvious indications of alteration" fall within Bruton because they "refer[] directly to the 'existence' of the nonconfessing defendant." Gray v. Maryland, 523 U.S. at 192 (emphasis added); see also United States v. Alvarado, 882 F.2d 645, 653 (2d Cir. 1989) (noting that Danzey "is clearly distinguishable" from Richardson because redaction in Danzey "allowed the jury to 'fill in the blank' with the defendant's name").

Then, in 1989, we indicated in Tutino that a Bruton challenge to a redacted confession was properly analyzed by reference to two questions: (1) did the redacted statement give any "indication to the jury that the original statement contained actual names," and (2) did "the statement standing alone . . . otherwise connect co-defendants to the crimes." United States v. Tutino, 883 F.2d at 1135. Similar inquiries – whether a redaction "notif[ies] the jury that a name has been deleted" and the type of inference a jury would have to make to link a defendant to the redaction – animate Gray's analysis of what redactions are sufficient to take a confession outside Bruton's protective rule. Gray v. Maryland, 523 U.S. at 195-96. Moreover, Gray suggested that a carefully crafted neutral word substitution could yield answers to these inquiries that demonstrated a satisfactory avoidance of Bruton concerns.

-20-

See id. at 196 (suggesting substitution of "a few other guys" for defendants' names).

Accordingly, we reject any suggestion that Gray generally overruled this court's Tutino line of precedents.

> (2) *Gray* Did Not Overrule this Circuit's Caselaw Specifically in Cases Involving Confessions Implicating a Single Accomplice

Jass nevertheless insists that Gray v. Maryland precludes continued reliance on our Tutino line of precedents in cases such as this one where a confession, even as redacted, implicates only one person other than the declarant, and only the declarant and one other person are on trial. This, she submits, is a circumstance not specifically considered in Sanin. We are not persuaded to read Gray as Jass urges.

First, as we have already noted, Gray did not involve the substitution of a neutral word for a defendant's name in a way that resembled a statement that a declarant might actually have made if he had been trying to avoid specifically identifying a confederate. Rather, Gray involved substitution of the word "deleted" for actual names, a device that was more likely to emphasize than to conceal the fact that the declarant had specifically inculpated someone. See id. at 193-94 (citing Malinski v. New York, 324 U.S. 401, 430 (1945) (Rutledge, J., dissenting) for proposition that substitution of "X" or "Y" for names in confession and similar redactions are "devices . . . so obvious as perhaps to emphasize the identity of those they purported to conceal"). Second, to the extent Richardson v. Marsh "placed outside the scope of Bruton's rule those statements that incriminate inferentially" rather than directly,

-21-

Gray clarified that it was "the kind of, not the simple fact of, inference," that was significant. Id. at 195-96 (emphasis omitted). It was because the confession in Gray, even after redaction, "obviously refer[red] directly to someone, often obviously the defendant," that a jury could "immediately" infer that the declarant defendant had, in fact, inculpated the co-defendant, "even were the confession the very first item introduced at trial." Id. at 196 (observing that "redacted confession with the blank prominent on its face . . . 'facially incriminat[es]' the codefendant" (quoting Richardson v. Marsh, 481 U.S. at 209) (emphasis and alteration in Gray)).

Although Jass argues that a jury would "immediately" infer her guilt from the fact that Leight's redacted confession alluded to only a single, presumably female, confederate in the abuse of Victim 2, and that only she and Leight were on trial for this abuse, these circumstances are not analogous to Gray and do not support the argument that Gray precludes application of our Tutino line of precedents to Jass's Confrontation Clause challenge. The redaction of Jass's name from Leight's confession and the substitution of neutral words such as "another person" effectively concealed from the jury the fact that Leight had "refer[red] directly to someone" and that the identified person was "obviously the defendant." Gray v. Maryland, 523 U.S. at 196.[6]

_____

[6] These circumstances also distinguish this case from United States v. Peterson, 140 F.3d 819 (9th Cir. 1998), cited by Jass to support her argument that Gray effectively reverses our Tutino line of precedents. In Peterson, the Ninth Circuit observed that "Gray clarifies that the substitution of a neutral pronoun . . . in place of the defendant's name is not permissible if it is obvious that an alteration has occurred to protect the identity of a specific

-22-

From <u>Bruton</u> to <u>Richardson</u> to <u>Gray</u>, the Supreme Court's Confrontation Clause concern has been with juries learning that a declarant defendant specifically identified a co-defendant as an accomplice in the charged crime. Underlying this concern is the practical recognition that "[s]pecific testimony" identifying the non-declarant co-defendant is "more vivid than inferential incrimination," and, as such, necessarily "more difficult to thrust out of mind." <u>Richardson v. Marsh</u>, 481 U.S. at 208; <u>see</u> <u>Gray v. Maryland</u>, 523 U.S. at 196. Once a jury learns of a defendant's specific identification – whether through introduction of an unredacted confession, <u>see</u> <u>Bruton v. United States</u>, 391 U.S. at 124, or through a clumsy redaction that effectively reveals the fact, <u>see</u> <u>Gray v. Maryland</u>, 523 U.S. at 193 – the law can no longer justifiably rely on the presumption that juries will follow a limiting instruction barring use of the confession against the identified non-declarant co-defendant. <u>See</u> <u>Bruton v. United States</u>, 391 U.S. at 135 (noting great risk that jury "will not, or cannot" follow limiting instruction in such circumstances).

But as the Supreme Court emphasized in <u>Richardson</u>, <u>Bruton</u>'s exception to the

_____

person." <u>Id.</u> at 822. As the qualifying clause indicates, <u>Peterson</u> did not construe <u>Gray</u> to hold – contrary to our precedents – that neutral-word substitution was necessarily inadequate to eliminate <u>Bruton</u> concerns. Rather, <u>Peterson</u> construed <u>Gray</u> to hold that a substitution is inadequate <u>if</u> it would be apparent to the jury that alterations had been made to conceal the identity of a named person. At issue in <u>Peterson</u> was the replacement of a defendant's name with the term "person X," a substitution that, like the word "deleted" in <u>Gray</u>, or "blank" in <u>Danzey</u>, only emphasized to the jury that the original confession had contained an actual name. Because such a redaction could not survive the first step of analysis under <u>United States v. Tutino</u>, 883 F.2d at 1135, <u>Peterson</u> does not support Jass's argument that <u>Gray</u> effectively reverses that precedent.

general rule that juries will follow instructions, including instructions to consider confessions only as against the declarant defendant, is "narrow." Richardson v. Marsh, 481 U.S. at 207. "[T]he foundation of Bruton's exception to the general rule" that juries follow limiting instructions is "the overwhelming probability of their inability to do so" once they learn that the defendant declarant's confession "'expressly implicat[ed]'" a co-defendant as an accomplice. Id. at 208 (emphasis added and alteration in original) (quoting Bruton v. United States, 391 U.S. at 124 n.1). Where a redaction and substitution adequately conceal from a jury a declarant defendant's specific identification of a confederate, however, the Supreme Court has concluded that "it is a less valid generalization that the jury will not likely obey the instruction to disregard" the confession in its consideration of the guilt of a non-declarant defendant. Id.

Thus, what Bruton and its progeny demand is a redaction and substitution adequate to remove the "overwhelming probability" that a jury will not follow a limiting instruction that precludes its consideration of a redacted confession against a defendant other than the declarant. These cases do not construe the Confrontation Clause to demand further that a confession be redacted so as to permit no incriminating inference against the non-declarant defendant. To the contrary, the law assumes that even a redacted statement will prejudice a defendant if it is considered against him. As the Supreme Court observed in Richardson, "the very premise of our discussion [of the Confrontation Clause] is that respondent would have been harmed by [the declarant defendant's redacted] confession if the jury had

-24-

disobeyed [the court's limiting] instruction[]." Id. at 207 n. 3 (emphasis in original). The critical inquiry is, thus, not whether a jury might infer from other facts (whether evidence admitted at trial or circumstances such as the number of defendants on trial) that a declarant's neutral allusion to a confederate might have referenced the defendant. It is whether the neutral allusion sufficiently conceals the fact of explicit identification to eliminate the overwhelming probability that a jury hearing the confession at a joint trial will not be able to follow an appropriate limiting instruction. See Richardson v. Marsh, 481 U.S. at 208. We conclude that our Tutino line of precedents remains useful to making this determination.

> b. Leight's Confession Was Redacted in Such a Way as To Permit a Jury to Follow a Limiting Instruction Not To Consider this Evidence Against Jass

Having rejected Jass's argument that Gray effectively overruled this circuit's precedents, we consider whether the particular redactions and substitutions here at issue were sufficient to avoid the constitutional error identified in Bruton, i.e., that the admission created an intolerable risk that the jury would not, or could not, follow an instruction to consider Leight's redacted confession only against him, and not against Jass. See Bruton v. United States, 391 U.S. at 135. Consistent with Tutino's two-step framework, now informed by Gray, we examine first whether Leight's redacted confession "indicat[ed] to the jury that the original statement contained actual names," United States v. Tutino, 883 F.2d at 1135, and, second, whether the redacted confession, even if "the very first item introduced at trial" would "immediately" inculpate Jass in the charged crime, see Gray v. Maryland, 523 U.S.

-25-

at 196; United States v. Williams, 936 F.2d at 700-01 (considering redacted confession "in isolation from the other evidence introduced at trial" to assess whether it incriminates defendant); United States v. Tutino, 883 F.2d at 1135.

On the question of whether the redacted confession signaled to the jury that Leight had actually named Jass in his statement, we easily conclude – and Jass does not seriously contest – that it did not. Agent Miller's testimony that Leight mentioned "another person" plausibly put those neutral words in Leight's mouth – e.g., "Mr. Leight told me that he and another person had taken [Victim 2] to the Rockaway mall in New Jersey," Trial Tr. at 223 – and in no way suggested to the jury that Leight had provided Agent Miller with the actual name of his accomplice. Compare United States v. Yousef, 327 F.3d at 150 (observing that "fact of redaction" was not "obvious" where word "neighbor" was substituted for defendant's name in redacted statement), with Gray v. Maryland, 523 U.S. at 193 (noting that "[t]o replace the words 'Sam Jones' with an obvious blank will not likely fool anyone"), and United States v. Peterson, 140 F.3d at 822 (finding substitution of defendant's name with "person X" was inadequate because it was "obvious that an alteration has occurred to protect the identity of a specific person"). While we do not foreclose the possibility of a neutral-word substitution being so conspicuously awkward as to fail the first step of Tutino analysis – as, for example, where an admission is modified to state, "When I realized the guard had pulled the alarm, I turned and said to another person, 'Look, other person, we have to get out

-26-

of here,'"[7] – that is not this case. The redactions and substitutions here attributed statements to Leight that might actually have been said by a person admitting his own culpability in the charged conspiracy while shielding the specific identity of his confederate. See, e.g., Trial Tr. at 225 ("Mr. Leight told me that he took pictures of [Victim 2] and the other person in various sexual poses."); id. ("Mr. Leight told me that he and the other person and [Victim 2] were able to view the photographs on the digital camera.").

Because the redacted statements neither manifested "obvious indications of alteration," Gray v. Maryland, 523 U.S. at 192, nor otherwise signaled to the jury that the statements had originally "contained actual names," United States v. Tutino, 883 F.2d at 1135, we proceed to the second step of analysis, asking whether, in light of these redactions and substitutions, the inference the jury would have had to make to connect Jass to the redacted statement was sufficiently attenuated to place the statement outside Bruton's scope. See Gray v. Maryland, 523 U.S. at 195-96. In urging us to answer this question in the negative, even under our established precedents, Jass relies on the same two facts that informed her argument that Gray overruled these precedents. Because (1) only two adults were involved in the charged crime and only two adults (Jass and Leight) were on trial, and (2) Leight's reference to attempted sexual intercourse with "another person" clearly signaled to the jury that his confederate was a woman, Jass asserts that the jury would immediately

---

[7] We rely on the good sense of trial judges in this circuit to recognize that such a statement could be redacted to state more plausibly, ". . . I turned to the guy with me and said, 'Look, we have to get out of here.'"

infer that she was the other person referenced in Leight's confession. We are not persuaded. We conclude that a jury would have had to refer to other trial evidence to link Jass to the redacted statement. See Richardson v. Marsh, 481 U.S. at 208 (placing outside scope of Bruton rule statements that incriminate inferentially only by reference to "evidence introduced later at trial"); accord Gray v. Maryland, 523 U.S. at 196.

In making this determination, we view the redacted statement in isolation to evaluate its likely impact on a jury. See Richardson v. Marsh, 481 U.S. at 208-09; United States v. Yousef, 327 F.3d at 150 (noting that Bruton test asks whether "redacted statement, standing by itself" implicated defendant (emphasis added)); United States v. Williams, 936 F.2d at 700 (instructing that "appropriate analysis to be used when applying the Bruton rule" is to "view the redacted confession in isolation from the other evidence introduced at trial"). When we do that here, we conclude that it would not have been immediately apparent to a jury that heard only Leight's redacted references to "another person" that he was specifically inculpating Jass in the abuse of Victim 2. The "other person" could have been anyone.

The fact that Leight's confession referred to attempted intercourse with his confederate might be understood to identify the "other person" as a woman. But a description that arguably narrows the possibilities to half the population hardly points an accusatory finger directly at Jass so as to raise Bruton concerns. See Gray v. Maryland, 523 U.S. at 194 (observing that Confrontation Clause concern arises when redacted statement "points directly to the defendant"). Not surprisingly, then, in United States v. Kyles, we held

-28-

that substituting the male pronoun "he" for a defendant's name did not "run[] afoul of Bruton." 40 F.3d at 526. In Gray itself, the Supreme Court suggested that the identified Confrontation Clause violation could have been avoided by substituting "a few other guys," a phrase suggesting male confederates, for the names of the defendants. Gray v. Maryland, 523 U.S. at 196. By contrast, Gray explained that redactions "that use shortened first names, nicknames, [or] descriptions as unique as the 'red-haired, bearded, one-eyed man-with-a-limp'" would fall within Bruton's protection. Id. at 195. So too would a description of a defendant as "this white guy" when coupled with particulars as to "age, height, and weight." Harrington v. California, 395 U.S. 250, 253 (1969); see also United States v. Hoover, 246 F.3d 1054, 1059 (7th Cir. 2001) (holding that replacement of defendants' names with terms "incarcerated leader" and "unincarcerated leader" provided jury with "aliases based on their occupations" that "no more concealed their identities" than would "the substitution of 'Mark Twain' for 'Samuel Clemens'"). A simple gender reference, however, lacks the specificity necessary to permit a jury to draw an immediate inference that the defendant is the person identified in the confession.

Jass submits that the presumed gender reference in Leight's confession must be considered in light of the fact that she was the only woman – indeed, the only person – on trial with Leight. We reject this argument. As discussed above, we conclude at Tutino's first step that Leight's confession was not obviously altered to omit the specific identity of his confederate. See supra at **[26-27]**. At most, therefore, a juror might have inferred from

-29-

Leight's confession that the prosecutor believed Jass to be the "other person" that Leight acknowledged in his confession, but – as far as the jury was aware – did not specifically identify. Under these circumstances, the availability of this inference did not jeopardize Jass's right to confrontation.[8]

In sum, because the redaction in this case cleared both hurdles of our Tutino analysis as informed by Gray, we reject Jass's Confrontation Clause challenge to the admission of Leight's confession at their joint trial. In reaching this conclusion, we emphasize what we expect is obvious: a jury may no more use a defendant's confession against a non-declarant defendant in conjunction with other evidence than alone. But the Supreme Court has identified only the latter scenario as presenting a Confrontation Clause problem that cannot be cured with an appropriate limiting instruction. See Richardson v. Marsh, 481 U.S. at 208; see also Gray v. Maryland, 523 U.S. at 196; Bruton v. United States, 391 U.S. at 135. Where

_____

[8] In Gray v. Maryland, the Court discussed a different inference as to the prosecution's view that arises where a confession is redacted using "obvious indications of alteration." 523 U.S. at 192. Where a "blank" in a redacted confession indicated that the declarant specifically identified a confederate, Gray observed that "a more sophisticated juror, wondering if the blank refers to someone [other than the defendant], might also wonder how, if it did, the prosecutor could argue the confession is reliable, for the prosecutor, after all, has been arguing that [the defendant], not someone else, helped [the declarant] commit the crime." Id. at 193.

Jurors in Jass's case, however, could not have drawn a similar inference from Leight's redacted confession because prosecutors employed neutral substitutions that plausibly indicated only that Leight acknowledged having a confederate, but that did not suggest that he had made a specific identification. When a confession is properly redacted in this way, a prosecutor may argue that the confession is reliable without tempting a "more sophisticated juror" to make a further inference as to the reliability of a specific identification made in the confession.

-30-

a jury must look to other trial evidence to link a defendant to a redacted confession, the Confrontation Clause "calculus changes" sufficiently to remove the statement from Bruton's protective rule. Richardson v. Marsh, 481 U.S. at 211. This is not to suggest that it will "always be simple" in such circumstances "for the members of a jury to obey the instruction that they disregard an incriminating inference," only that in such circumstances "there does not exist the overwhelming probability of their inability to do so that is the foundation of Bruton's exception to the general rule" that juries are presumed to follow instructions. Id. at 208.

### 3. Any Error in the Admission of Leight's Confession Was Harmless

Our conclusion that the substitution of neutral words for Jass's name in Leight's confession was adequate to avoid a Confrontation Clause violation is reinforced in this case by the other extensive and powerful evidence of Jass's guilt. Indeed, we determine that the other evidence of Jass's guilt was so overwhelming that, even if we had identified error in the admission of Leight's redacted confession, that error would be harmless beyond a reasonable doubt. See Schneble v. Florida, 405 U.S. 427, 428 (1972) (reviewing Bruton error for harmlessness beyond a reasonable doubt); United States v. Vitale, 459 F.3d at 195; United States v. Kirsh, 54 F.3d 1062, 1068 (2d Cir. 1995) (holding that Bruton error "is not ground for reversal . . . where the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the defendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless

-31-

error" (internal quotation marks omitted)).

The evidence against Jass included the detailed, direct testimony of Victim 2, who recounted how Jass as well as Leight had sexually abused her both in New York and on the October 2004 trip to New Jersey. Although defendants predictably challenged Victim 2's credibility, Jass herself provided powerful corroboration for the child's account by admitting that she and Leight had taken the youngster to the New Jersey hotel at issue. Moreover, attributing the overnight hotel stay to a shopping trip was so patently implausible as to suggest that Jass's real purpose was the criminal one charged. See, e.g., United States v. Reyes, 302 F.3d 48, 56 (2d Cir. 2002) (noting that "it is reasonable [for a jury] to infer guilty knowledge from [defendant's] false exculpatory statement"). Indeed, that conclusion was reinforced by Jass's admission that the seized thong underwear had been purchased by Victim 2 on the New Jersey trip, by the presence of that underwear in defendants' home, and by the seizure therefrom of sexual devices and videos that Victim 2 testified were used to teach her how to engage in sexual activities with defendants. Further, and by no means least important, Victim 2's testimony of sexual abuse by Jass as well as Leight was powerfully corroborated by the testimony of Victim 1, Leight's daughter, who recounted years of sexual abuse by both defendants, distinct and far more frequent in occurrence, but disturbingly similar in kind, to that experienced by Victim 2.

In sum, because (1) the redaction and substitution in this case adequately concealed Leight's specific inculpation of Jass from the jury; and (2) the jury could not immediately

-32-

have inferred from the redacted confession alone that Jass was the "other person" referred to but, rather, needed to consider other trial evidence to make that link, we determine that it was not "overwhelming[ly] probab[le]" that the jury was unable to follow the district court's limiting instruction barring consideration of the confession against Jass. Richardson v. Marsh, 481 U.S. at 208. Accordingly, we reject Jass's Confrontation Clause challenge as without merit. In any event, because the other evidence of Jass's guilt was overwhelming, we conclude that any error in the admission of Leight's redacted confession at defendants' joint trial was harmless beyond a reasonable doubt.

B.     Jass's Sentencing Challenge

Jass challenges her 65-year sentence as unreasonable on various grounds, the majority of which we address in the summary disposition issued today. See United States v. Jass, --- F. App'x ---. Here, we focus only on Jass's claim of procedural error in the application of a two-level enhancement to her Guidelines calculation pursuant to U.S.S.G. § 2G2.1(b)(3)(B)(ii) (2003). While we conclude that the conduct here at issue does not fall within the plain meaning of § 2G2.1(b)(3)(B)(ii), any Guidelines calculation error was harmless beyond a reasonable doubt because the district court expressly stated that it would have imposed the same below-Guidelines sentence regardless of the enhancement's applicability.

1.     Standard of Review

In the aftermath of United States v. Booker, we review sentences for "reasonableness," 543 U.S. 220, 262 (2005), "a deferential standard limited to identifying abuse of discretion regardless of whether a challenged sentence is 'inside, just outside, or significantly outside the Guidelines range,'" United States v. Jones, 531 F.3d 163, 170 (2d Cir. 2008) (quoting Gall v. United States, 128 S. Ct. 586, 591 (2007)); see United States v. Cavera, 550 F.3d 180, 189-90 (2d Cir. 2008) (en banc). Our review proceeds in two steps: first, we must be "satisfied that the district court complied with the Sentencing Reform Act's procedural requirements," United States v. Cavera, 550 F.3d at 189 (emphasis omitted); and second, if the sentence is "procedurally sound," we must "consider [its] substantive reasonableness" by evaluating "whether the District Judge abused his discretion in determining that the [18 U.S.C.] § 3553(a) factors supported" the sentence imposed, Gall v. United States, 128 S. Ct. at 597, 600; United States v. Cavera, 550 F.3d at 189.

Jass argues that her sentence was infected by procedural error because the district court incorrectly calculated her Guidelines range to include the two-level enhancement provided in § 2G2.1(b)(3)(B)(ii) for "the use of a computer . . . to . . . solicit participation with a minor in sexually explicit conduct." See Gall v. United States, 128 S. Ct. at 597 (recognizing "failing to calculate (or improperly calculating) the Guidelines range" as procedural error that can render sentence unreasonable); United States v. Cavera, 550 F.3d at 190. When confronted with a challenge to a sentencing court's application of a particular

guideline, we review the court's "interpretation of the sentencing guidelines de novo," United

States v. Sero, 520 F.3d 187, 189 (2d Cir. 2008), and we "accept its findings of fact unless

they are clearly erroneous," United States v. Guang, 511 F.3d 110, 122 (2d Cir. 2007); see

United States v. Cavera, 550 F.3d at 190.

### 2. The Applicability of § 2G2.1(b)(3)(B)(ii)

The construction of § 2G2.1(b)(3)(B)(ii) is a question of first impression for our

court.[9]  In the 2003 version of the Sentencing Guidelines applicable to Jass's sentence, that

section stated:

> If, for the purpose of producing sexually explicit material, the offense involved
> . . . (B) the use of a computer or an Internet-access device to (i) persuade,
> induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually
> explicit conduct, or to otherwise solicit participation by a minor in such
> conduct; or (ii) solicit participation with a minor in sexually explicit conduct,
> increase by 2 levels.

U.S.S.G. § 2G2.1(b)(3) (2003).[10]  Before resolving Jass's particular legal challenge to the

_____

[9]  We have located no published opinion by our sister circuits interpreting this
provision.  While the Tenth and Sixth Circuit Courts of Appeals had the opportunity to
construe prior versions of this section in United States v. Reaves, 253 F.3d 1201 (10th Cir.
2001), and United States v. Brown, 237 F.3d 625 (6th Cir. 2001), it appears no court of
appeals has considered the scope of § 2G2.1(b)(3) since it was amended in November 2000.

[10]  In 2004, § 2G2.1 was amended to move subsection (b)(3) to the newly created
subsection (b)(6).  The wording of § 2G2.1(b)(3) was changed slightly to substitute
"interactive computer service" for "Internet-access device," so that it now reads:

> If, for the purpose of producing sexually explicit material, the offense involved
> . . . (B) the use of a computer or an interactive computer service to (i)
> persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage
> in sexually explicit conduct, or to otherwise solicit participation by a minor in

application of this guideline to her case, we explain why we consider a related issue waived.

           a.       <u>Jass Waived Any Factual Challenge to Her Knowledge of Leight's Use of Computer Images To Groom Victim 2 for Sexual Activities with Defendants</u>

The factual basis for the district court's application of § 2G2.1(b)(3)(B)(ii) to Jass's Guidelines calculation was Leight's use of a computer, with Jass's knowledge, to show Victim 2 pornographic videos of adults engaging in sexual acts with children in order to convince her that such activity was normal. Although Jass contends on appeal that the court clearly erred when it found, consistent with the PSR, that she was aware of Leight's computer use for this purpose, she raised no such objection below. When a "defendant fails to challenge factual matters contained in the presentence report at the time of sentencing, the defendant waives the right to contest them on appeal." <u>United States v. Rizzo</u>, 349 F.3d 94, 99 (2d Cir. 2003); <u>see</u> <u>United States v. Eberhard</u>, 525 F.3d 175, 179 (2d Cir. 2008); see also Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact."). Thus, we conclude that Jass's challenge to the district court's factual finding about her knowledge of Leight's computer use is waived, and we proceed to consider whether the computer use falls within the scope of § 2G2.1(b)(3)(B)(ii).

---

        such conduct; or (ii) solicit participation with a minor in sexually explicit conduct, increase by 2 levels.

U.S.S.G. § 2G2.1(b)(6) (2008). No change was made to the subsection (ii) solicitation provision.

b.     The Computer Use at Issue Does Not Fall Within § 2G2.1(b)(3)(B)(ii)

Jass did preserve before the district court the legal argument that using computer images to desensitize a child to sexual activity with adults in order to persuade that child to participate in such activity does not fall within the scope of § 2G2.1(b)(3)(B)(ii).[11] Section 2G2.1(b)(3)(B)(ii) provides for a two-point enhancement when a computer is used to "solicit participation with a minor in sexually explicit conduct." The immediate interpretive question raised by this language is, "Whose participation is being solicited?" To affirm the district court, we would have to conclude that the correct answer in this case is "Victim 2." But such a reading of the guideline would yield the curious conclusion that defendants warranted a two-level enhancement in their offense level because Leight used a computer to "solicit [Victim 2's] participation with [Victim 2] in sexually explicit conduct." Not only is this interpretation illogical, it does not comport with the usual definition of participation, i.e., "[a]

_____

[11] At first glance, it might appear that Leight's conduct falls within § 2G2.1(b)(3)(B)(i), because Leight used a computer to "persuade, induce, [and] entice" Victim 2 "to engage in sexually explicit conduct." U.S.S.G. § 2G2.1(b)(3)(B)(i) (2003). The application notes to this subsection, however, clearly indicate that it applies "only to the use of a computer . . . to communicate directly with a minor," id. § 2G2.1(b)(3)(B)(i), app. note 5, which the government does not contend occurred in this case. Relying on the referenced application note, the district court determined that Leight's conduct did not fall within subsection (i). See United States v. Pedragh, 225 F.3d 240, 244 (2d Cir. 2000) (noting that application notes are "part and parcel" of the guideline they interpret); Stinson v. United States, 508 U.S. 36, 38 (1993) (noting that application notes control judicial application of guideline at issue unless commentary "violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline"). As no party challenges that conclusion, we have no occasion to consider it further and, thus, focus only on the district court's reliance on § 2G2.1(b)(3)(B)(ii).

taking part, association, or sharing (with others) in some action or matter."  11 Oxford

English Dictionary 268 (2d ed. 1989) (emphasis added).  While an individual can certainly

act alone, such a person would not generally be said to be participating with himself in the

activity at issue.

The government disagrees with this reading of the guideline and implicitly asks that

we read the word "with" as used in the guideline to mean "by," so that it would extend to

Leight's solicitation of participation by Victim 2 in sexually explicit conduct.  In considering

this argument, "we employ basic rules of statutory construction and give all terms . . . their

ordinary meanings unless there are persuasive reasons not to do so."  United States v.

Roberts, 442 F.3d 128, 129 (2d Cir. 2006).  We conclude that the government's interpretation

is not supported by the plain language of § 2G2.1(b)(3)(B)(ii).

Where the Commission wished to reference a minor's own participation in particular

activity, it expressly used the word "by" to convey that meaning.  For example, the

immediately preceding subsection covers attempts to "solicit participation by a minor" in

sexually explicit conduct.  U.S.S.G. § 2G2.1(b)(3)(B)(i) (emphasis added).  Thus, because

Congress indicated that it could use the word "by" when it so desired, and because the

ordinary meaning of "by" is not the same as "with,"[12] we decline to equate these prepositions

---

[12] "[A] main use of by" is to "[i]ntroduce the principal agent."  2 Oxford English
Dictionary 728 (2d ed. 1989) (emphasis in original).  By contrast, "with" is used "[a]fter
words expressing transaction or dealing between persons (with the person as obj[ect])."  20
Oxford English Dictionary 443 (2d ed. 1989).

as they appear in § 2G2.1(b)(3)(B)(i) and (ii).  See Universal Church v. Geltzer, 463 F.3d 218, 223 (2d Cir. 2006) (noting that because "Congress knew how to use [certain] words when [it] so desired," fact that those words had not been used was meaningful).

It is more natural to read subsection (ii) as addressing a situation in which one person solicits another person to engage in sexual activities with a minor.  Otherwise, the phrase "participation with" is rendered effectively meaningless.  See Duncan v. Walker, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute." (internal quotation marks omitted)); accord Tablie v. Gonzales, 471 F.3d 60, 64 (2d Cir. 2006).  Because the record in this case demonstrates no such third-party solicitation, we are obliged to identify procedural error in the district court's use of § 2G2.1(b)(3)(B)(ii) to calculate Jass's Sentencing Guidelines range.[13]

---

[13] While we refer to the guideline applicable at the time of Jass's sentence, our analysis applies with equal force to the guideline that presently contains this particular enhancement: U.S.S.G. § 2G2.1(b)(6)(B)(ii) (2008).  See supra note **[10]**.

We also note that district courts are not required to treat the Guidelines, rendered advisory by the Supreme Court's decision in United States v. Booker, 543 U.S. 220,  as exhaustive in identifying aggravating or mitigating circumstances relevant to sentencing. See United States v. Cavera, 550 F.3d at 189; see also United States v. Jones, 531 F.3d at 172 ("The Supreme Court has clearly signaled that district courts enjoy considerable discretion in identifying the grounds that can justify a non-Guidelines sentence.").  We thus do not foreclose the possibility that Leight's use of a computer to facilitate defendants' abuse of Victim 2 could have been considered by the district court in its independent assessment of the factors identified in 18 U.S.C. § 3553(a).  See generally United States v. Reaves, 253 F.3d at 1205 ("Congress has found that child pornography is often used as part of a method of seducing other children into sexual activity; a child who is reluctant to engage in sexual activity with an adult . . . can sometimes be convinced by viewing depictions of other children 'having fun' participating in such activity." (internal quotation marks omitted)).

### 3. Harmless Error

Where we identify procedural error in a sentence, but the record indicates clearly that "the district court would have imposed the same sentence" in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing. United States v. Cavera, 550 F.3d at 197; see United States v. Sanchez, 517 F.3d 651, 665 (2d Cir. 2008); United States v. Villafuerte, 502 F.3d 204, 207 (2d Cir. 2007). This is such a case. Recognizing that the applicability of § 2G2.1(b)(3)(B)(ii) to this case was by no means clear, and inviting appellate review and action on an unsettled question of law, the district court unequivocally stated that it would impose the same 65-year sentence on Jass however "the issue of [the § 2G2.1(b)(3)(B)(ii)] two-point enhancement . . . ultimately works out [on appeal]." Sentencing Tr. at 44, 56. Under these circumstances, we can confidently conclude that the district court's application of § 2G2.1(b)(3)(B)(ii) constitutes harmless sentencing error.

## III. Conclusion

To summarize, we conclude as follows:

(1) Gray v. Maryland did not overrule – either generally or specifically as applied to cases involving only two defendants – this court's Tutino line of precedents for evaluating Confrontation Clause challenges to redacted confessions admitted into evidence at joint trials.

(2) The admission into evidence at defendants' joint trial of Leight's redacted

-40-

confession substituting neutral words for all references to Jass did not violate Jass's Sixth Amendment rights under <u>Bruton v. United States</u> and its progeny; in any event, any error was harmless beyond a reasonable doubt.

(3) Because U.S.S.G. § 2G2.1(b)(3)(B)(ii) applies to the use of a computer to solicit a third party's participation in sexual activities with a minor, circumstances not present in this case, the application of this guideline to the calculation of Jass's Sentencing Guidelines range constituted procedural error, but the error was harmless because the district court clearly stated that it would have imposed the same sentence in any event.

In light of these conclusions, as well as those stated in the related summary order, also issued today, the judgments of conviction against defendants Jass and Leight are hereby AFFIRMED.